Jay B. STRINGER, Appellant,

v.

## CONTINENTAL CASUALTY
COMPANY, Appellee.

Court of Appeals of Tennessee, Western
Section Sitting at Knoxville.

Feb. 23, 1978.

Certiorari Denied by Supreme Court
July 10, 1978.

Noone, Stringer, Powers & Schulman,
Chattanooga, for appellant.

Duggan, McDonald & Hawley, Chatta-
nooga, for appellee.

NEARN, Judge.

By this suit plaintiff seeks recovery as a
beneficiary under a group hospitalization
insurance policy. As will be seen, other
than the existence and terms of the policy
in question, all the material facts are within
the singular knowledge of plaintiff and are
actually uncontroverted.

Those facts are that the plaintiff, a li-
censed lawyer in Illinois and Tennessee, en-
rolled in a group insurance plan sponsored
by the Illinois Bar Association in 1966.
Shortly after enrollment the plaintiff re-
ceived from the insurance company agent a
letter stating, "You will be notified of your
next premium due by being billed from this
office approximately 30 days in advance or
about 9–1–66." Payments were to be made
semi-annually. Thereafter, the plaintiff re-
ceived his semi-annual premium notices and
paid them including the April 1968 premi-
um. During the fall of 1968 plaintiff was
in the process of relocating in Tennessee
from his home in Illinois. At the same time
the Illinois Bar was in the process of negoti-
ating a new group policy for its policyhold-
ers. Although plaintiff had filed with the
post office a notice of his new address in
Chattanooga, Tennessee, plaintiff testified
he did not receive a notice of the existence
of a new policy or of the premium being
due in the fall of 1968.

Defendant adduced testimony to the ef-
fect that notices were mailed to all mem-
bers of the Illinois Bar Association in Sep-
tember of 1968, advising that the old policy
was to be terminated, a new policy issued,
and the amount of premium; that it was its
further procedure to mail follow up notices
to those who did not respond to the initial
premium request and such procedures were
followed.

The policy contains no notice provision.

Plaintiff testified that in December of
1968 he received a letter (Ex. 21) from the
insurance agent containing a sealed blue
envelope which contained the Continental
Casualty certificate of coverage for the new
policy, a copy of the new master policy,
along with a premium notice. The cover
letter containing the foregoing items com-
menced with the statement: "Your Associa-
tion has adopted a new Medicare Supple-
ment group policy effective October 1, 1968.

This special program is designed expressly for each member and his spouse over age 65." Since plaintiff was not then over 65, he concluded that the letter did not affect him, read no further, and did not open the blue envelope. However, plaintiff did not discard Exhibit 21, but retained same. Had plaintiff continued reading the letter he would have discovered that the second paragraph advised of higher hospital and medical costs plus

"the advent of Medicare has contributed to the necessity of terminating the existing Major Medical Policy # 22–A–3416 on October 1, 1968, 12:01 A.M. Standard Time. A new group Major Medical contract also will be issued to each insured member under age 65 and his dependents effective the same date. Spouses who have not attained their 65th birthday will be issued a new Major Medical contract at that time. Upon their reaching age 65, they too will be issued the Medicare Supplement."

Had plaintiff read to the fourth paragraph he would have discovered that it provided:

"Enclosed find your certificate for the new program which has been issued to you automatically and without evidence of insurability. The descriptive brochure enclosed contains an enrollment form requiring your completion. Your new coverage will become effective upon return of your completed form with payment of the premium per the enclosed statement by October 31, 1968."

Plaintiff received no other notice from the insuror or the Illinois Bar Association.

In August 1969 upon plaintiff discovering that his daughter would have to have expensive surgery, plaintiff determined to look at his insurance policy and see what his benefits were. On August 18, 1969, plaintiff testified he first discovered his premium notice in the blue envelope heretofore mentioned and immediately remitted premiums to the insurance company with the statement that "In going over my papers yesterday I discovered the premium notice which I apparently overlooked in the confusion of my moving from Illinois." The insurance company advised plaintiff that his policy had lapsed because of non-payment of the premium, returned his check, and advised that if he wished to reapply for coverage he could do so. Plaintiff did not do so.

By this suit plaintiff seeks recovery of $16,225.26 for hospital expenses incurred on behalf of his daughter. The insuror contended the policy had lapsed.

The Chancellor found that Exhibit 21, if it had been read, would put anyone on notice that there was a premium to be paid. The one page letter comprising Exhibit 21 explicitly referred to "an enclosed premium notice" and the Chancellor concluded that the letter complied with any notice requirements that might be placed upon the insurance company. The Chancellor also stated that he knew "of no excuse in the law for not reading such a letter that a person receives." We do not know of one either.

The Chancellor correctly held that the fact that the plaintiff did not read his letter or his certificate did not relieve him of knowledge of its contents and the Assignments of Error to the effect that the Chancellor erred in so finding are overruled and the decree below affirmed. Costs of this appeal are adjudged against appellant.

Honorable JERRY SCOTT, by designation of the Supreme Court of Tennessee, took part in the hearing of this appeal in the absence of Judge PAUL R. SUMMERS.

Done at Knoxville in the two hundred and second year of our Independence and in the one hundred and eighty-third year of our Statehood.

MATHERNE, J., and SCOTT, Special Judge, concur.